# H. J. KARP AND OTHERS v. THE SALVATION ARMY.[1]

July 22, 1938.

No. 31,720.

*Herbert T. Park,* for appellant.

*A. B. Childress,* for respondents.

LORING, JUSTICE.

This was a suit to enforce specific performance of an agreement for the exchange of real estate in the city of Faribault. The trial court granted plaintiffs the relief they sought.

The defendant had acquired what was known as the Cadwallader building, which it found unsuitable for its purposes. Evidently the plaintiff Karp had been instrumental in selling the Cadwallader building to the defendant, and when he learned that it was not satisfactory he suggested an exchange of that building for one known as the Batchelder building. Accompanied by Lieutenant Colonel Penfold, Major Leech, and Captain Anderson of the Salvation Army, he went to the Batchelder building and looked it over. Under date of January 2, 1937, he wrote Colonel Penfold, of Minneapolis, setting out a complete description of the two properties and the terms of the proposed exchange, stating: "This will give you a complete statement regarding the building we propose to exchange, for the building you just purchased from Mrs. Cadwallader, * * *" To this letter Colonel Penfold responded on the letter-

[1]Reported in 281 N. W. 41.

head of the Northern Division of the Salvation Army, stating that he would like to have a more thorough inspection of the property before making the proposal to the Property Board. January 12, 1937, Colonel Penfold again wrote Mr. Karp stating that he had found it impossible to get down to Faribault, and, while he had wanted to inspect the building a little more closely, "I have had a good enough look at it, I feel, to advocate the exchange as outlined in your letter. This is just to advise you that I have sent on the suggestion to our Chicago Board with my recommendation for an exchange. Just as soon as the Board has decided, we will advise you." January 16, 1937, Colonel Penfold again wrote to Mr. Karp stating: "I am pleased to advise you that our Property Board has agreed to the transfer of the property in harmony with the proposal you submitted. As soon as you have finalized the purchase of the property mentioned and we have had the opportunity of scrutinizing the title, the transfer can be made. I may say that I am leaving the city today and will be gone a month, but my assistant, Major Leech, will finalize the transaction for me. You can write him at this address and he will follow down the property deal." In response to these letters Mr. Karp wrote the defendant at its Minneapolis address, marking the letter for the attention of Major Leech, and stating: "A letter received from Lieutenant Colonel R. Penfold stating the exchange of buildings here has been O'K'd by your Chicago office. A few days will be required to get the abstract in shape, and I will then forward it providing nothing else interferes." This letter was acknowledged under date of January 25 by the defendant over Major Leech's signature as divisional secretary, stating that on receipt of the abstract he would forward it to the Chicago office for their attention. January 30, 1937, Karp sent the abstract, mortgage, and warranty deed to Major Leech with the statement that "all back taxes, current taxes, assessments, as well as the '36 taxes on your building, will be paid on the day we exchange deeds." This letter was acknowledged February 1 by Major Leech stating that he had sent the document to the Chicago Property Board for their attention. February 20, 1937, Major

Leech wrote Karp to the effect that he had received a wire from the Chicago headquarters inquiring if the abstract to the new Faribault property had been examined by an attorney and requesting the submission of an opinion in writing. He stated: "Your kindness in submitting to us the required information will be appreciated. Evidently this is the only thing which is holding up the closing of the deal." February 23, 1937, Charles S. Batchelder, a lawyer of Faribault, wrote a letter to Colonel Penfold at Minneapolis stating that he had examined the title to the John D. Batchelder property and found no cloud thereon excepting the delinquent taxes which the defendant must pay as a part of the consideration. The plaintiff Karp paid Batchelder $100 down on the transaction and arranged with the mortgagees of the Cadwallader property to accept a mortgage in like amount on the Batchelder property. The receipt for $100 signed by Batchelder gave the terms of the agreement and described the property and was also signed by Karp as agent for the Salvation Army. Money was deposited with the county treasurer to cover the delinquent taxes. March 5, 1937, Major Leech wrote Karp: "The opinion of title we have already received, which apparently is satisfactory to our Chicago office." March 18, 1937, Major Leech as divisional secretary wrote Mr. Karp on the defendant's letterhead, stating that Colonel Penfold would be in Faribault on the following Sunday and asked Karp to arrange to see him at the Salvation Army quarters at four o'clock in the afternoon and that he would there have the papers necessary to close the deal. Major Leech requested that Karp have the warranty deed to the Batchelder property subject to the new mortgage and the receipted tax bills covering all delinquent taxes, together with the release of the mortgage on the Cadwallader property. He closed the letter as follows: "The early finalization of this deal is desired." All of these letters were admitted in evidence without objection. Pursuant to this request Karp went to the Salvation Army headquarters and met Colonel Penfold, Major Leech, and Captain Anderson and saw the deed and mortgage executed by the defendant, but did not receive delivery of them because it was

Sunday. They arranged to be at the courthouse the following morning, but the Salvation Army people did not appear, Colonel Penfold having left for Minneapolis. Penfold later came to Faribault, accompanied by Commissioner McIntyre, who inspected the Batchelder building. After inspecting it, he said: "Well, I don't think we will go through with this deal. * * * It will cost us around $1,000 to fix it up." Karp said, "Well, what about this money that I paid down on the other building and these agreements here?" McIntyre replied, "Oh, we are in a hurry now, and you real estate men know how to take care of that. * * * We will offer a prayer." They prayed and left, and on May 1 Karp received a letter stating that they had concluded that they would not go through with the deal.

The only defense set up by the defendant is lack of authority on the part of the negotiators who represented the Salvation Army to make a deal, it being their claim that such a transaction could be authorized only by the Property Board of the Salvation Army at Chicago. All of these letters, having come in without objection, were sufficient evidence that the Property Board had approved the deal and authorized the exchange. Batchelder's receipt for the $100 sufficiently described his property and the terms of the transaction to bind him. The proper Salvation Army authorities had executed the deed and mortgage necessary to carry out the transaction from the defendant's standpoint. We think the evidence sufficiently shows authority on the part of the Salvation Army officers to bind the corporation and that the trial court was amply justified in finding that the defendant entered into the agreement for the exchange and in making a decree requiring it to perform that agreement.

The judgment appealed from is affirmed.